## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SELJO KOLJENOVIC,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:05-1109** |
| v. | : | (MUNLEY, D.J.) |
| | | (MANNION, M.J.) |
| **JOHN ASHCROFT, U.S. Attorney General, and the IMMIGRATION & NATURALIZATION SERV.,**[1] | : | |
| | : | |
| **Respondents** | : | |

## REPORT AND RECOMMENDATION

Before this court is the relator's petition for writ of habeas corpus. (Doc. No. 1.) For the following reasons, the court recommends that the petition be

---

[1]The court notes that, pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2192 (codified at 6 U.S.C. §§ 251 et seq.) (effective Mar. 1, 2003); id. § 552(d) (savings provision deems statutory references to officers and agencies performing functions transferred to Department of Homeland Security to refer to Department of Homeland Security); see Clark v. Martinez, 543 U.S. 371, 374 n.1 (2005) (noting transfer of authority), the Immigration and Naturalization Service ("INS") was abolished and its functions transferred from the Department of Justice to, as relevant here, the Department of Homeland Security's Bureau of Immigration and Customs Enforcement ("ICE"). Therefore, the attorney general is not a proper respondent to this action.

Furthermore, the respondents note that the proper respondent in a habeas petition submitted by an alien detainee is the ICE field office director of the district in which the alien is detained, citing the "immediate custodian" rule that the proper respondent is the "'person having custody of the person detained.'" (Doc. No. 6 (quoting 28 U.S.C. § 2243) (citing Braden v. 30th Jud. Cir. Ct. of Kentucky, 410 U.S. 484, 494-95 (1973); Vasquez v. Reno, 233 F.3d 688 (1st Cir. 2000), cert. denied, 534 U.S. 816 (2001)).) They state that, in this case, the respondent should be Thomas Decker, the acting field office director of the office of detention and removal operations. The court deems this as a request to substitute parties. Accordingly, there being no objection from the relator, the court recommends that the clerk of court be ordered to substitute Thomas Decker for the Attorney General and the INS.

granted in part and denied in part.

**I.   Background**

The relator emigrated from Yugoslavia to the United States with his parents in 1988 as a lawful permanent resident, when he was eight years old. Although his father became a U.S. citizen, the relator's mother and the relator never acquired U.S. citizenship. Because his mother was not a U.S. citizen, the relator could not acquire derivative U.S. citizenship, and he remains solely a citizen of either Serbia or Montenegro.[2] The relator's parents and brother continue to live in the United States. (Doc. Nos. 1, 6 ex. D, & 9.)

On December 10, 2001, the relator was convicted in New York state court of attempted arson in the second degree. He was sentenced to three and one-half years' imprisonment to be followed by five years' parole. (Doc.

---

[2]The parties refer to the relator as a citizen, or not, of Serbia and Montenegro. However, since the commencement of this action, the union of Serbia and Montenegro has dissolved with Montenegro's declaration of independence on June 3, 2006, following a referendum in which a majority of Montenegrins voted to sever the union. On June 5, 2006, Serbia declared itself an independent sovereign and the successor state to Serbia and Montenegro. It is unknown on the record before the court whether the relator is now a citizen of Serbia or Montenegro. See Vince Crawley, "United States Recognizes Newly Independent Nation of Montenegro," USINFO, U.S. Dep't of State, Bureau of Int'l Info. Programs, June 13, 2006, at http://usinfo.state.gov/eur/Archive/2006/Jun/13-473052.html (last visited June 15, 2006); Serbia and Montenegro, in CENTRAL INTELLIGENCE AGENCY, THE WORLD FACTBOOK, at http://www.cia.gov/cia/publications/factbook/geos/yi.html (last visited June 15, 2006); Background Note: Serbia and Montenegro, U.S. DEP'T OF STATE, BUREAU OF PUBLIC AFFAIRS, Dec. 2005, at http://www.state.gov/r/pa/ei/bgn/5388.htm (last visited June 15, 2006).

Nos. 1 ex. A, 6 & ex. B.) Based on the relator's conviction of an aggravated felony, the ICE began deportation proceedings in 2002 and the relator was ordered removed on January 21, 2003. (Doc. No. 6 & exs. A & C.) The Board of Immigration appeals affirmed the removal order, which became final on June 10, 2003. The relator filed a habeas petition in the District Court for the Northern District of New York, which issued a stay of removal that was effective until December 14, 2004.[3] (Doc. No. 6 & exs. D & E.) Upon his release to parole, the relator was detained by the ICE on September 3, 2004. The relator has since been in ICE custody and is currently at the Pike County Correctional Facility, Lord's Valley, Pennsylvania. (Doc. Nos. 6 & 9.)

On December 9, 2004, the ICE requested travel documents from the embassy of Serbia and Montenegro. (Doc. No. 6 & ex. F.) On January 11, 2005, the relator also requested travel documents from the embassy, although no response is indicated in the record. (Doc. No. 1 ex. A.) Based on the relator's birth certificate, the embassy confirmed to the ICE that a Seljo Koljenovic was a citizen of Serbia and Montenegro, but needed to confirm that the person in ICE custody was in fact Seljo Koljenovic. It informed the ICE that the relator could submit a photo identification issued by Serbian and Montenegro or his parents could submit a notarized statement in their native language that the relator was in ICE custody. (Doc. No. 6 & ex. F.)

---

[3] It is unclear when the relator petitioned for habeas corpus and when the stay was issued.

3

The ICE issued the relator a form I-229(a), "Warning for Failure to Depart," on March 29, 2005, which informed the relator that he had thirty days to produce information to assist in his removal. The relator was ordered to submit any current or expired passports to the ICE; to apply for travel documents or a passport; to comply with any instructions from the embassy; to submit to the ICE his birth certificate or other government identification documents; to provide contact information for family and friends in the United States as well as Serbia and Montenegro and request them to contact the embassy to facilitate removal; to take steps to have Serbian and Montenegrin citizenship reinstated; to provide copies to the ICE of any correspondence to and from the embassy; and to submit a Serbian and Montenegrin passport or identification document or, alternatively, a sworn, notarized statement from his parents in their native language. The form further informed the relator that his removal period would be extended and he would be subject to criminal proceedings if he failed to cooperate. (Doc. No. 6 ex. G.)

According to an ICE memorandum, the relator's attorney was in contact with the relator's parents, but the parents refused to submit the required statement because they do not want their son to be deported. (Doc. No. 6 ex. F.) Consequently, the ICE issued the relator a "Notice of Failure to Comply Pursuant to 8 CFR 241.4(g)," which informed the relator that his removal period was being extended because he "failed to provide a sworn and notarized statement from your parents, in their native language, confirming

4

your identity."[4] (Doc. No. 6 ex. H.) The ICE does not allege that the relator failed to comply with any other ICE requirement.

The record before the court shows that the ICE conducted custody reviews on December 14, 2004, and April 4, 2005. In the first review, the ICE denied release because the relator's release "would prove a danger to society." (Doc. No. 9 ex. at 52.) It noted that a request for travel documents was currently pending with the embassy, which the ICE expected to receive. (Id.) The second review denied release because the relator was "deemed to be a flight risk and a threat to the public." (Doc. No. 9 ex. at 54.) It noted that the request for travel documents was still pending because of the "process to verify [the relator's] identify." (Id.) It further noted that Yugoslavia regularly issues such travel documents and "[t]here is no indication at this time that a certificate will not be issued." (Id.)

On June 1, 2005, the relator filed the instant petition for writ of habeas corpus. (Doc. No. 1.) The relator contends his continued detention beyond six months is unconstitutional under the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001). He claims he has complied with the ICE's efforts to remove him by submitting the required documentation to facilitate his removal. However, according to the relator, Serbia and Montenegro refuses to provide travel documents. Consequently, the relator

---

[4]Presumably the relator, who entered the United States when he was eight, has no official Serbian and Montenegrin photo identification.

contends that his removal is not reasonably foreseeable and his continued detention violates the Constitution.[5] (Id.)

In a response filed June 27, 2005, the ICE contends that Zadvydas is inapplicable. The government argues that Zadvydas applies only to continued detention after the removal period. It further argues that, because of the relator's refusal to provide a statement from his parents, his removal period has been statutorily extended. Thus, according to the respondent, the constitutional issues addressed by the Supreme Court are not relevant in this case.

The relator filed a traverse on January 12, 2006.[6] (Doc. No. 9.) In it, the relator raises no new arguments. He does, though, include new exhibits that the court has considered in preparing this report.

---

[5]The relator also contends he is stateless because he is not a citizen of Serbia and Montenegro. He claims that he is a citizen of Yugoslavia, which has ceased to exist. However, the former state of Serbia and Montenegro recognized Seljo Koljenovic as a citizen. Serbia and Montenegro was a successor state to the Federal Republic of Yugoslavia, which was formed in 1992 by Serbia and Montenegro as a self-proclaimed, albeit internationally unrecognized, successor state to the Socialist Federal Republic of Yugoslavia. See SERB. & MONT. CONST. (Constitutional Charter of the State Union of Serbia and Montenegro, Feb. 4, 2003), arts. 63, 64; Serbia and Montenegro, in THE WORLD FACTBOOK, supra ,n.1; Background Note, U.S. DEP'T OF STATE, supra, n.1. It is unclear how Serbia's and Montenegro's recent independence will affect the relator's removal.

[6]The relator apparently belatedly received the government's response because the government served it on an incorrect address in a New York facility, which the response's certificate of service validates. Finding no prejudice because of the government's error, the court has considered the relator's traverse.

6

## II. Discussion

Generally, an alien ordered removed from the United States must be removed within a ninety-day removal period and detained during that period. 8 U.S.C. § 1231(a)(1)(A), (B), & (2).[7]  However, "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal," then the removal period is suspended.  Id. § 1231(a)(1)(C).  If the removal period is suspended, then the alien's detention may be continued.  Id.

In this case, the court finds that the ICE had insufficient grounds to suspend the relator's removal period.  The sole reason given for the suspension is that the relator refused to produce the sworn, notarized statement from his parents.  But there is no evidence that the relator had, in fact, failed or refused in good faith to assist in his removal or conspired or acted to prevent his removal.  According to the record, including a memorandum prepared by and submitted to the court by the ICE, the relator's attorney contacted the parents to obtain the statement, and the parents refused to provide it.  The ICE has not shown that the parents' refusal stems in any way from the relator's instructions or encouragement.  The court cannot reasonably hold the relator responsible, without more, for the apparently

---

[7]The statute identifies the attorney general as the officer charged with enforcing immigration detention and removal policies.  However, as noted supra, n.1, those functions have actually been transferred to the secretary of homeland security.

7

independent action of his adult parents.  Here, there is no proof that the relator has done anything to frustrate his removal.  Cf. Lima v. Immigration & Naturalization Serv., 341 F.3d 853, 858 (9th Cir. 2003) (holding that alien's lie about nationality justified suspension of removal period); Abdel-Muhti v. Ashcroft, 314 F.Supp.2d 418, 426-30 (M.D. Pa. 2004) (rejecting the ICE's argument that alien's lies in prior immigration proceedings were cause for suspension of removal period in current proceeding); id. at 430 n.9 ("While ICE is empowered to prosecute and detain those who withhold information, absent some reasonable basis for its apparent suspicion that Petitioner is lying or withholding information, the law does not authorize ICE to continue Petitioner's detention until he supplies answers it likes."); Liang v. Bureau of Immigration & Customs Enforcement, 2004 WL 1126276, at *3 (E.D. Pa. 2004) (not reported) (alien's failure to produce passport justified suspension of removal period); Clark v. Ashcroft, 2003 WL 22351953, at *4 (E.D. Pa. 2003) (not reported) (accepting removal period suspension for three to four year period where alien lied about nationality, but rejecting suspension for period after alien admitted nationality); Ford v. Quarantillo, 142 F.Supp.2d 585, 588 (D.N.J. 2001) (rejecting suspension of removal period because of alien's lies about nationality that were subsequently corrected).

    Consequently, the relator's removal period extended to the ninety days authorized by statute, but no further.  A removal period begins running on the latest of three trigger dates: when the removal order becomes final; when a

stay issued by a reviewing court is lifted; or, when the alien is released from custody unrelated to immigration proceedings. 8 U.S.C. § 1231(a)(1)(B). In this case, the triggering date appears to be December 14, 2004, when the New York district court's stay was lifted. Thus, the relator's removal period ended on March 15, 2005, and he has been detained for fifteen months beyond the removal period.

An alien who has not been removed during the removal period should be released on supervision. Id. § 1231(a)(3). However, the ICE may continue to detain an inadmissible alien, including aggravated felons, subject to a removal order beyond the removal period if the ICE finds that the alien poses a threat to the community or is a flight risk. Id. § 1231(a)(6). But finding that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the due process clause of the Fifth Amendment, Zadvydas, 533 U.S. at 690, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention," id. at 689. The Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. If, in reviewing the habeas petition of an alien detained beyond the removal period, the district court finds that removal is "not reasonably foreseeable," it must find that the detention is unauthorized and order the alien's supervised release. Id. at 699-700.

A six-month period of detention, including the removal period, is presumptively reasonable. Id. at 701. After the six-month period ends, the

burden is on the alien to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" in order to obtain release from detention. Id. If the alien provides "good reason," the United States must rebut the alien's showing in order to continue detention. Id. But until an alien shows that there is "no significant likelihood of removal in the reasonably foreseeable future," he may be continued in detention. Id.

Here, the presumptively reasonable detention period ended on June 15, 2005. The relator has been detained one year beyond that period. However, continued detention is not per se unconstitutional; indeed, detention may continue until the alien can show that there is no reasonable likelihood of removal. Id. But, as detention beyond the removal period increases, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

In this case, the relator has not yet shown "good reason" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. The ICE is attempting to secure travel documents, and its exhibits submitted to the court indicate that aliens were regularly removed to the former country of Serbia and Montenegro. The sole impediment to the relator's removal thus far appears to have been former Serbia and Montenegro's inability to confirm the relator's identify as Seljo Koljenovic. While the ICE, upon the advice of the embassy, has insisted that the relator's parents provide a sworn statement confirming the relator's identity, there is

no indication that the ICE, with the relator's cooperation, cannot find some other means of confirming the relator's identify to secure his travel documents that would be acceptable to either Serbia or Montenegro.

Although the very recent breakup of the Serbian and Montenegrin union creates confusion as to the relator's removal–for instance, it is unclear which state he is allegedly a citizen of, whether that state will continue to accept aliens removed from the United States as in the past, and what the ICE must now do to secure travel documents for the relator– however, it would be unfair to charge that confusion to the ICE. The breakup was expected and likely considering the state of affairs in Serbia and Montenegro, but the ICE is certainly not at fault for the new international situation. Moreover, there is no indication that either Serbia or Montenegro will be hostile to accepting removed aliens from the United States or that the relationship between the United States and Serbia or Montenegro will change, and it is reasonable to expect that both states will succeed or accede to the former union's international agreements. Thus, it can not yet be said that the relator's removal is less reasonably foreseeable than before the breakup.

Nonetheless, the court reminds the ICE that its detention of the relator must always comport with the due process requirements discussed in Zadvydas. The ICE's continued detention of the relator is warranted only so long as his removal is reasonably likely in the foreseeable future. If it appears likely that the ICE will soon renew its removal procedures with Serbia or

Montenegro, whichever the relator is a citizen of, then its continued detention of the relator may satisfy the Supreme Court's concerns in Zadvydas. If, however, there is delay or other obstacles to renewing removal procedures, then the ICE's continued detention may well violate the relator's due process rights. The ultimate resolution of the constitutionality of the relator's continued detention, assuming that the ICE determines to continue detaining the relator, will depend upon the speed and diligence with which the ICE attempts to remove the relator to either Serbia or Montenegro. At some point, if the ICE continues to detain the relator without successfully arranging for his removal, the relator may have "good reason" to enable him to reapply for the writ. Cf. Joseph v. United States, 127 Fed.Appx. 79, 81 (3d Cir. 2005) (not precedential) (per curiam) (finding alien ordered removed who was detained as threat to community past six-month period had not shown good reason to be released where the United States has requested travel documents from the foreign government, was verifying the alien's identity, and stated that the foreign government regularly repatriates nationals and the alien had produced no evidence beyond mere allegation that foreign government would not repatriate him, but noting that the alien was free to file new § 2241habeas petition if "the [continued] inability to procure travel documents" provides "good reason"); Cyril v. Bureau of Immigration & Customs Enforcement, 2006 WL 1313857, at * 1-*2 (M.D. Pa. May 11, 2006) (slip copy) (same); Parekh v. Gonzales, 2006 WL 13112, at *2 (M.D. Pa. Jan. 3, 2006) (slip copy) (same)

("[A]t some point in time, the inability of ICE to obtain travel documents may provide 'good reason' to believe the removal is unlikely to be carried out. There is no evidence of record that [the alien] has refused to cooperate in procuring travel documents. Nor has ICE explained or documented any recent steps taken to procure such papers."); <u>Singh v. Bureau of Immigration & Customs Enforcement</u>, 2005 WL 3560532, at *2 (M.D. Pa. Dec. 28, 2005) (slip copy) (same).

Accordingly, the court recommends that the relator's petition for writ of habeas corpus be granted to the extent that the ICE's basis for continued detention, his failure to cooperate, is improper. In light of the court's discussion and because it appears that the ICE has not conducted a custody review since April 2005, it is recommended that the ICE be ordered to conduct an immediate custody review under the procedures at 8 C.F.R. § 241.4 to determine whether it is appropriate to continue detaining the relator. However, the court also recommends that the relator's petition for writ of habeas corpus be denied to the extent that the relator seeks immediate release because he has not shown that his removal will not occur in the reasonably foreseeable future.

### III. Conclusion

On the basis of the foregoing, **IT IS RECOMMENDED THAT**:

(1). the clerk of court be **ORDERED** to substitute as respondent

      "Thomas Decker, Acting Field Office Director of the Office of Detention and Removal Operations," for "John Ashcroft, U.S. Attorney General" and the "Immigration & Naturalization Service."

(2).    the relator's petition for writ of habeas corpus (Doc. No. 1) be **GRANTED** to the extent that the ICE has improperly suspended the relator's removal period and the relator's removal period has thus expired;

(3).    the respondent be **ORDERED** to conduct an immediate custody review of the relator pursuant to the procedures at 8 C.F.R. § 241.4; and,

(4).    the relator's petitioner for writ of habeas corpus (Doc. No. 1) be **DENIED** to the extent that immediate release is unwarranted because the relator has not shown good reason to believe that his release is not reasonably likely in the foreseeable future;

                                                  S/ Malachy E. Mannion
                                                  **MALACHY E. MANNION**
                                                  **United States Magistrate Judge**

Date: June 26, 2006
O:\shared\REPORTS\2005 Reports\05-1109.01.wpd